IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **Walter T. Champion,** § | |
|   *Plaintiff* § | |
| § | |
| v. § | Civil Action No. 4:19-cv-03025 |
| § | **JURY TRIAL DEMANDED** |
| **Texas Southern University** § | |
|   *Defendant* § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**I.    PARTIES**

**1.**    Plaintiff Walter T. Champion is a Caucasian man residing in Houston, Harris County, Texas.  Professor Champion has devoted the last thirty-four years of his life to the development of Texas Southern University's Thurgood Marshall School of Law ("TMSL"). TMSL is a public university with a historically black enrollment.  Plaintiff is currently a full, tenured professor of law.

**2.**    Defendant Texas Southern University ("TSU") is a coeducational statewide general-purpose institution of higher education in Houston, Harris County, Texas.  TSU is an historically black college or university ("HBCU").  TSU controls and operates TMSL.  Defendant TSU may be served by serving its President, Dr. Austin Lane, 3100 Cleburne, Hannah Hall, Suite 220, Houston, Texas 77004, as set forth in the Texas Education Code, Section 106.38.

**II.    JURISIDICTION AND VENUE**

**3.**    The Southern District of Texas the proper venue for this lawsuit.  Plaintiff is employed by TSU in Harris County, Texas, and many of the discriminatory acts occurred in the Southern District of Texas. TSU has its headquarters and management in Harris County, which is in the Southern District of Texas.

**4**.	Venue is proper in this district under 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to the claim occurred in Harris County, Texas.  Venue in Harris County is provided by the Texas Education Code, Section 106.38.

**5**.	Jurisdiction is proper because this case is brought under Title VII of The Civil Rights Act of 1964, as amended, §701, 42 U.S.C. §2000e, *et. seq*.,  42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985, and 29 U.S.C. § 206(d)(1); and applies Texas law under the Texas Whistleblower Act,  V.T.C.A., Tex. Gov't Code, §554.001, *et. seq.* This Court has jurisdiction concerning the federal claims pursuant to 28 U.S.C. § 1331, and concurrent jurisdiction over the Texas Whistleblower claim.

## III.	STATEMENT OF FACTS

**6**.	The Thurgood Marshall School of Law (TMSL) was established in 1946.  The law school's mission Statement provides that the law school's purpose is "to expand opportunities for the underserved in the legal profession… with special emphasis on a historically black heritage and tradition."  Instead of furthering its mission, however, the law school has hired administrators and professors who are unqualified, racist, and counterproductive to the law students' education and law school's mission. The Students at TMSL do not receive consistent quality instruction and as a result the law school's mission is undermined.

**7**.	The law school administration regularly fails to follow established law, industry-wide standards, and its own written policies.  The law school regularly fails to make merit-based employment, promotion, and compensation decisions, and allows and ratifies racial and gender discrimination, harassment, and retaliation against persons who complain.  The law school pays higher compensation and provides better conditions to non-white employees.  This pattern of

discrimination operates to the detriment of the law students, the law school's reputation, and the law school's mission.

**8**.     The American Bar Association requires a first-time bar passage rate of at least 75% to maintain accreditation.  TMSL consistently has the lowest bar passage rate in Texas, a rate of 40% for first time bar examinees from the February 2017 bar exam, 64% for the July 2017 bar exam, 28% for the February 2018 bar exam, 44% for the July 2018 bar exam, and 28% for the February 2019 bar exam.

**9**.     Texas taxpayers pay millions of dollars every year for the salaries and other benefits of employment provided to certain TMSL professors and administrators who are unqualified, cannot answer simple questions in the subjects that they teach, and who are unable to help the law students or further the mission of the law school.  Many administrative decisions at TMSL are based on race, racism, and racist cronyism, violate state funding statutes and anti-discrimination laws, violate TSU and TMSL policies and faculty manuals, grossly misappropriate public monies, and are *ultra vires*.

**10**.    Titled professorships and chaired positions are provided to professors who demonstrate extraordinary scholarship and receive scholarly recognition in the academies.  Titled professorships are distributed predominantly as a reward for published work and scholarly recognition, based on state law, official TSU and TMSL policies, and industry-wide customs, rules, and standards. The TSU and TMSL faculty manuals and other documents set forth specific standards for awards of titled professorships, focusing on the quality of scholarship and objective criteria for measuring the quality of scholarship.  The specific standards are set forth in the faculty manuals to avoid arbitrary or capricious awards of titled professorships and to assure that the lucrative titles are awarded based on merit, to comport with due process, and to avoid arbitrary,

discriminatory and non-meritorious awards. Plaintiff had a reasonable expectation of a title, increased compensation, and retention of his titles, based on his extraordinary work ethic and unprecedented publication record.

11. Plaintiff began teaching at TSU on December 4, 1984 and became a full professor in 1991. Plaintiff began publishing books in 1990 with national legal publishing companies—this was unprecedented for TSU. In 1992, Plaintiff published *Sports Law* in a *Nutshell*, which is now in its 5th edition (2017). Plaintiff also published *Gaming Law in a Nutshell*, which is now in its 2nd edition (2018). Plaintiff has written 12 books, with two other books completed, and has two other books under contract. Plaintiff is a nationally known expert in sports law. Despite these accolades and achievements, however, Plaintiff only earns roughly $153,000 per year, which is an amount lower than any other comparable professor.

12. The TSU policy manual contains provisions concerning who should be rewarded the titled professorships and $100,000 in additional compensation. The manual provides in part:

> I. "The faculty shall give predominate weight to the candidate's scholarship."; and
>
> II. "Quality scholarship eventually gains recognition by other scholars or the legal profession."

13. The "Nutshell series" is published by America's foremost legal academic publisher, West Academic Publishing. The "Nutshell series" is written by "recognized experts" who present the essential law of a subject. No other HBCU professor has written a Nutshell, no professor at Texas law schools has written one; and Plaintiff is the only American law professor to have written two entries in the Nutshell series. It is a great honor and recognized as such by all American law schools.

**14**.     Certain TMSL leaders have recognized Plaintiff's contributions verbally, but not monetarily.  In 2000, then TMSL Associate Dean McKen Carrington sent Plaintiff's *Sport's Law in a Nutshell* to preferred law school applicants.  In April 2009, then TMSL Dean Carrington stated that Plaintiff should be making $170,000 per year regardless of titled or endowed professorships.  Dean Carrington further said he would achieve that goal of achieving parity between Plaintiff's contributions and his compensation, but Dean Carrington was removed as Dean in July 2009.  In April 2017, Professor Okezie Chukwumerije said, after he was just elected as the Eugene Harrington Professor of law, that if he knew that Plaintiff was also a candidate, he would have chosen not to be a candidate.

**15**.     TMSL's decision to choose Chukwumerije for the Eugene Harrington Professorship over the more experienced (in both years and scholarship) Professor Champion was a decision that is racially based.  This is only one example of about 10 where Plaintiff has experienced discrimination based on race in violation of Title VII of the Civil Rights Act.

In this regard, Plaintiff's situation mirrors the case of *Harrington v. Harris*, 118 F.3d 359 (5th Cir. 1997), whereby Caucasian professors successfully sued  TSU for wage discrimination based on race and substantive due process right violations.  In that case, the Court found that "Plaintiffs are currently underpaid with respect to certain colleagues with comparable experience and qualifications."   The Court also found that the underpayment was a result of illegal discrimination based on race, retaliation for the exercise of their first amendment rights and the arbitrary and capricious way performance evaluations were made." *Id*., at 364.

**16**.     Regarding comparators, there is a long list of minority professors who are less credentialed, yet earn more money than does Plaintiff:

- Manuel Leal, listed as "Hispanic Male," joined the faculty in 2004 and makes $161,602.69;

- Edith Wu, an African-American female, became tenure-track professor in 2000, and makes $144,478.64 plus $20,000 as Lois Prestage Woods Professor of Law;

- Cassandra Hill, an African-American Female, began in 2009 and is now the Associate Dean for Academics. She earns $179,182;

- Marcia Johnson, an African-American female, joined the faculty in 1991. She earns $161,209 plus additional monies for current position as special assistant to the "Acting" Dean, Gary Bledsoe;

- McKen Carrington, an African-American male, joined the faculty in 1984 and earns $194, 805;

- Dannye Holley, an African-American male became full professor in 1983 and earns $190,393;

- L. Darnell "Larry" Weeden, an African-American male, joined faculty in 1990 and earns $170,776 plus $20,000 as titled professor and another $45,000 for appointment as the Associate Dean for Faculty Development and Enhancement on October 1, 2018, for a total of at least $235,776.

17. TMSL's last merit increase was in April of 2013. Plaintiff received no notice and received no money. He was one of only two law professors who received no additional compensation among the roughly 100 faculty and staff. Some faculty received up to $15,000. Plaintiff was intentionally not given notice so that TMSL could avoid paying him a raise. Following that point there was a ban on new hires. Plaintiff was the only qualified sports law expert who was already employed at TMSL eligible to be appointed as the George Foreman Professor of Sports and Entertainment Law, but TMSL chose to leave that post illegally vacant with no committee action from roughly 2012 – 2019.

18. Plaintiff was the Eugene Harrington Professor from 2005-06. He was elected George Foreman Professor of Sports & Entertainment Law in 2006 (2006-2012) after a national search. The George Foreman Professorship is our only fully endowed outside chair. Plaintiff also

applied for all four of the titled professorships from 2015-2017 and was passed over for minority professors Fain, Weeden, Wu, and Chukwumerije.

**19.**     Regarding the George Foreman professorship, Plaintiff was paid nothing during the first year, $20,000 for years two and three, and $30,000 for years four and five.  Typically, the amount paid to a professor is 4.5% of the trust.  In this case, TSU intentionally underpaid Plaintiff.  Moreover, the George Foreman chair has been unfilled since 2012, which is a violation of the trust agreement and the Texas Whistleblower statute. This disregard for filling that position further evidences Plaintiff's race-based claims.

**20**.     Following a national search for the George Foreman chair, Plaintiff was chosen as the only qualified candidate. He received ten "yes" votes and seven "no" votes, despite being the only qualified candidate. Upon information and belief, all the seven "no" votes were predominately based on Plaintiff's race.

**21**.     Plaintiff's George Foreman chair supposedly ended in 2012, but TMSL never informed Plaintiff that it was culminating. The Fourth Edition of Sports Law in a Nutshell was published in 2009 with a dedication to George Foreman.  Plaintiff also published five sports law articles and established the George Foreman Institute for Sports and Entertainment Law.  Those publications should have been more than enough to merit a rollover of the position for another five years.

**22**.     The George Foreman Professorship has been unfilled since May 2012. Despite this vacancy, the Appointments Committee has taken no action, and has made no decision or recommendation.  Such inaction presents a Whistleblower concern since Plaintiff has consistently reminded TMSL leadership that such a vacancy is in violation of the trust, but they have taken no action.

## V.     CAUSES OF ACTION

### COUNT 1.     Title VII Race Discrimination against TSU

28.     The preceding paragraphs are fully incorporated as if set forth fully herein.

29.     The Defendant TSU's conduct violates Title VII of the Civil Rights Act of 1964, which prohibits discrimination in employment based on race.

30.     Plaintiff is a racial minority at Texas Southern University.  He is more qualified than most, if not all the non-white professors, yet has a lower base salary. This is a violation by T.S.U. of 42 U.S. Code Section 2000e-2 (Unlawful employment practices).  Plaintiff has also been denied lucrative positions, such as deanships and directorships and had his earned title revoked, while non-white professors were treated much more favorably, and received deanships, titles, and directorships, despite being less qualified.  Race was a motivating factor in Defendant's adverse treatment of Plaintiff, and Plaintiff has suffered damages and other injury as a result.

31.     Plaintiff proved a prima facie case of discrimination under Title VII since TSU intentionally discriminated against plaintiff.  Civil Rights Act of 1964, § 701, *et. seq.*, 42 U.S.C. § 2000, *et seq.* Plaintiff establishes circumstantial evidence of intentional employment discrimination under Title VII by demonstrating that Defendant's articulated rationale was pretextual.  Plaintiff proved that the rationale was pretextual by showing that the discriminatory motive motivated employer, or that employer's explanation is unworthy of credence.  Civil Rights Act of 1964, §701, *et. seq.*, 42 U.S.C., 2000e, *et seq.*

32.     Plaintiff has been denied lucrative promotions, such as deanships and directorships and had his earned title revoked, while non-white professors were treated much more favorably, and have received deanships, titles, and directorships, despite being far less qualified.  These

actions are in violation of Federal Law.  Plaintiff timely met all filing prerequisites, has filed this lawsuit timely, and requests a trial by jury on his Title VII claims.

### COUNT 2.     Texas Whistleblower Claim Against TSU

**33**.     The preceding paragraphs are fully incorporated as if set forth fully herein.

**34.**     The Texas Whistleblower Protection Act prohibits retaliation against an employee for reporting a violation of law by the employing governmental entity or to another public employee.  The Texas Whistleblower Protection Act prohibits retaliation against public employees who report official wrongdoing, Tex. Gov't Code §§ 554.001-010. The elements of a whistleblower cause of action are as follows:  "A state or local government entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or to another public employee to an appropriate law enforcement authority." V.T.C.A., Education Code §33.081(c ); V.T.C.A., Tex. Gov't. Code §554.001.  The Whistleblower Act seeks to enhance openness in government and compel the State's compliance with law by protecting those who inform authorities of wrongdoing.  *See Llanes v. Corpus Christi Independent Sch. Dist*., 64 S.W.3d 638 (Tex. App. – Austin 1997, no writ).

**35.**     Plaintiff is an employee of a Texas governmental entity, Texas Southern University.  Upon information and belief, George Foreman entrusted $1,000,000 to fully endow the George Foreman Professor of Sports and Entertainment Law at TMSL.  Plaintiff was selected as the George Foreman Professor in 2006-2012.  From 2012 to the present, however, TMSL has refused to appoint another George Foreman Professor in violation of its legal, fiduciary, contractual, and trust duties, even though Plaintiff (who as the last appointed George Foreman Professor had standing to sue under the Whistleblower Statute), informed them on numerous occasions that the

George Foreman Professorship *must* be filled immediately.  As such, Plaintiff is a qualified whistleblower under Chapter 554.

36. Plaintiff spoke with three TMSL Deans roughly twenty-times from 2012 to the present about the necessity of filling the George Foreman Professorship.  The Deans have direct control under Local Gov't Code, Sec. 554.002(b)(1) (regulate under or enforce the law to be violated) to fill the post in a timely manner.  They did not, even though Plaintiff was the only person that could fulfill the trust obligations as George Foreman Professor.  Upon information and belief, Plaintiff was not appointed to this position based on his race and his insistence to TSU employees that they comply with the law.

37. Sections 271.151 to 271.160 of the Texas Local Government Code operates to waive local governmental entities' immunity from suit for breach of contract under certain circumstances.  Section 271.152 provides "[a] local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract subject to the terms and conditions of this subchapter."  Section 271.151 provides that a contract subject to the subchapter containing §271.152 is a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity.

38. The Whistle Blower Statute applies since TSU failed, year after year, to honor their trust, legal, contractual and fiduciary duties under Local Gov't Code Sec. 554.001 (1)(A) (a state or federal statute) and Sec. 554.001(1)(c) (a rule adopted under a statute or ordinance).  The statute that TSU violated was, *inter alia*, VTCA Educ. Code Ch. 51A (Control of Trust Funds).

39.     Plaintiff is entitled to injunctive relief, actual damages, court costs, and reasonable attorney fees under Local Government Code Sec. 554.003(a) because of TSU's refusal to follow through with their trust obligations from 2012 to the present. During this time, TSU did not reappoint Walter Champion to the George Foreman Chair even though he was the *only* qualified professor. Prof. Walter Champion was illegally stripped of his Position as George Foreman professor under Local Gov't Code Sec. 554.003(b), he is therefore entitled to reinstatement as the George Foreman Professor and compensation for lost wages during the eight years when he was not employed as the George Foreman Professor. (*See* Texas Local Gov't Code §554.003, Relief Available Public Employee).

## VI.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

40.     Plaintiff timely filed charges of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). On or around May 16, 2019, the EEOC issued Plaintiff a Right to Sue notice. Plaintiffs have timely filed this action and have complied with all administrative prerequisites to bring this lawsuit.

## VII.   DEMAND FOR JURY TRIAL

41.     Plaintiff asserts his rights under the Seventh Amendment to the U.S. Constitution, and other federal law, and demands in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## VIII.  CONCLUSION AND PRAYER

WHEREFORE, Plaintiff prays as follows:

a) For an award of damages to compensate Plaintiff for his economic losses, including back pay, lost wages, and other lost benefits of employment;

b) For an award of punitive damages;

c) For injunctive relief compelling Plaintiff to be reinstated as the George Foreman Chair with back pay for eight years;

d) For injunctive relief compelling Plaintiff to receive fair and equal compensation in the future;

e) For injunctive relief prohibiting unlawful conduct in the future;

f) For injunctive relief compelling plaintiff to be selected as an Associate Dean;

g) For an award of pre-judgment interest on the amounts owed at the maximum rate allowed by law;

h) For an award of costs of this action, together with reasonable attorney's fees and expert witness fees;

i) For an award of post-judgment interest on the amount of judgment until paid at the maximum rate allowed by law;

j) For an award of back pay at $30,000 per year for the past eight years; and

k) For such other and further relief as the court deems just and proper under both Title VII and the Texas Whistleblower Statute.

Respectfully Submitted,

*/s/ Andrew J. Cobos*  */s/ Walter T. Champion*

Andrew J. Cobos  Walter T. Champion
Texas Bar No. 24078352  Texas Bar No.:00786823
Southern Dist. No. 1322524  Thurgood Marshall School of Law
2201 Hermann Dr.  Houston, Texas 77004
Houston, Texas 77004  Tele: 281-704-7454
Tele: 713-234-5860  Fax: 713-313-4474
Fax: 713-393-7346  E-mail: wchampionjr@gmail.com
Email: andrew@cobos.law

***Lead Attorney***  ***Pro Se Co-Counsel for Plaintiff***